PATRICK H. HEFFRON

*v.*

JAMES H. RICE.

*Filed at Ottawa January 16, 1894.*

1. RECEIVER—*payment of interest on debts secured by mortgage on debtor's property.* Where a receiver of an insolvent firm pays interest on firm debts secured by a deed of trust on the assigned property, he will be entitled to credit for such interest so paid; and the fact that he may have borrowed a part of the money so paid from one of the partners, which he repaid, will not change the result.

2. SAME—*right to borrow money.* While it may be true that a receiver has no right to borrow money, yet if he uses money borrowed by him to discharge a valid lien on the trust property committed to

his care and custody, and has acted in good faith in making such payment, the debtors, after receiving the benefit of the payment, will have no ground of complaint, and the receiver will be entitled to credit for the money so paid out.

3. SAME—*right to loan the funds coming to his hands.* A receiver has no right to loan the funds coming into his hands as such, and if he makes a loan of such funds, and loses the money, he ought to be required to stand the loss.

4. A receiver, in the management of a hotel and its business, is, of necessity, required in many cases to exercise his discretion, and if he acts in good faith, and conducts the business as a prudent person would manage his own business, he ought not to be held responsible for a small loss. So if he cashes a worthless draft of $25 for a guest at his hotel, the loss should not fall on him, if he acted in good faith and with due prudence.

5. SAME—*proof of his account.* Where a receiver's account consisted of many items of payments, for some of which he took no receipts, but books were kept in which all payments were entered, and the payments were such as were incident to the business he was engaged in, and the proof showed that such items were correctly copied from the books kept by the receiver and his assistants, and the entries in the books were correct, the court will be justified in approving his account.

6. SAME—*duty to make an inventory of the property.* It is the duty of a receiver to make out and file with the court, when he is appointed, a list of the property which passes to his hands, so that creditors and all persons interested may know what property belongs to the parties.

7. In this case a receiver was, on January 22, 1889, appointed to wind up an insolvent co-partnership. He failed to file an inventory of the property and assets until March 11, 1889, when he filed one which was shown to be correct. There was no pretence that the receiver converted to his own use, or failed to account for, any property that came into his hands, and no injury was shown by the delay in filing the inventory: *Held,* there was no substantial ground of complaint as to the delay.

8. SAME—*right to compensation for services.* In the absence of legislation regulating the compensation of a receiver, the court in which he is appointed has the right to determine the amount that shall be paid; and in passing upon such compensation, an appellate court will ordinarily defer to the judgment of the court appointing the receiver, that court having full supervision of his conduct.

9. SAME—*measure of compensation.* As a general rule, the compensation of a receiver should correspond with the degree of business capacity, integrity and responsibility required in the management of the affairs intrusted to him. A reasonable and fair compensation should be allowed, according to the circumstances of each particular case.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

Messrs. OSBORNE BROS. & BURGETT, for the appellant.

Mr. CURTIS H. REMY, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court, affirming a judgment of the Superior Court of Cook county, wherein the accounts of James H. Rice, receiver, were confirmed and approved.

On the 9th day of January, 1889, James J. Gore filed a bill in the Superior Court of Cook county, against Patrick H. Heffron, for a dissolution of a partnership, for an accounting and injunction, and for the appointment of a receiver for certain leasehold interests in lots 14, 15, 16 and 17, in block 115, school section addition to Chicago, (being a strip of land one hundred feet in width, and extending from Clark street to Pacific avenue,) and the two buildings on said lots, (the Gore Fire-Proof European Hotel building and the Open Board of Trade building,) and the hotel business of such hotel. On the 22d day of January, 1889, the court appointed James H. Rice receiver. The order under which he was appointed was as follows: "Upon agreement of the parties hereto, it is ordered that James H. Rice be and he is hereby appointed receiver of the joint estate, property, real and personal, things in action, debts, equitable interests and other effects which belong to and are held in trust for the complainant, James J. Gore, and the defendant, Patrick H. Heffron, and especially the hotel business conducted on the property, known as Gore's Hotel, as described in the bill herein, and all personal property therein situated, to collect all rents and to control and manage the same, and to continue the said hotel business until the further

·order of this court, upon said receiver filing a bond as such receiver in the penal sum of twenty-five thousand dollars, ($25,000,) with surety to be approved by this court, conditioned for the faithful performance of his duties as such receiver." Rice acted as receiver under the appointment until July 16, 1889, when he resigned, and Nicholas D. Laughlin was appointed in his place.

In his account, receiver Rice claimed and was allowed by the court credit for $3749.58, which is claimed to be erroneous. Gore and Heffron were indebted to various creditors in different sums, for which they had given their notes, and executed a trust deed to Lyman J. Gage on the hotel property to secure their payment. The interest on these notes became due semi-annually, and the above sum was interest paid by the receiver on notes secured by the trust deed. It appears, from the evidence, that Gore advanced Rice a part of the $3749.58, and Rice subsequently repaid the amount advanced. We attach no importance to this fact. The payment stands on the same footing as if the entire amount had, in the first instance, been paid by the receiver from funds held by him as receiver. The interest was due from Gore and Heffron. The property in the hands of the receiver was pledged for its payment, and they jointly received the benefit resulting from the payment, and we perceive no just ground upon which either could complain.

It is said the receiver had no right to borrow any part of the money from Gore, or any other person. That may be true; but, at the same time, when the receiver used the money to discharge a valid lien on the property committed to his charge and custody, and acted in good faith in making the payment, after Gore and Heffron have received the benefit from the payment, we think the court properly allowed the receiver credit for the sum paid out.

It is also claimed that it was error to allow Rice a credit in his account of $25 on account of the Mitchell draft. It

appears that Mitchell was a guest at the hotel kept by the receiver, and $25 was advanced to Mitchell on his draft, which was subsequently returned dishonored. The master in chancery, in his report, disposed of the item by holding: "It is not an unusual thing for hotel managers to make small advances of this character. I think the loan in this instance may be properly considered one of the risks of the business, and charged to the profit and loss account of the hotel." It is true that the receiver had no right to loan the funds which came into his hands as receiver, and if he made a loan and lost the money he ought to be required to stand the loss. But in the management of the business of the hotel the receiver, of necessity, was required, in many cases, to exercise his discretion, and if he acted in good faith, and conducted the business as a prudent person would manage his own business, he ought not to be held responsible for a small loss like the one involved. Beach on Receivers, sec. 256.

It is next claimed that the court erred in allowing the receiver credit for seventy-three items, amounting to $9135.74, set forth in objections filed to the receiver's account. When Rice was appointed receiver he found the business divided into departments, consisting of the hotel business, the Open Board of Trade building, consisting of seventy-four offices, the bar, and the restaurant in the basement. Walter W. Eaton had charge of the Open Board of Trade building when Rice was appointed receiver, and he was continued in charge while Rice remained receiver. He had charge of renting the offices, collecting the rents, hiring help and paying the expense of help, and other small items in connection with the building. Rice also continued Nicholas D. Laughlin as manager. He testified in regard to his duties, as follows:

Q. "What were your duties during Rice's receivership?

A. "Manager of the hotel business, of the office and rooms. I did not have charge of the bar, the restaurant or the Open Board of Trade building. I collected the rent for the stores in

the hotel building. I kept the general cash book and ledger, which were in my private office. I received the moneys from the rent of rooms, which were turned over to me by the hotel clerks, the moneys from the restaurant, which were turned over to me by the cashier of the restaurant, and the moneys from the bar, which were turned over to me by the bar-keepers. Such clerks and such cashier put their receipts in the hotel safe at night and I took them out in the morning. I got the receipts from the bar daily. In such cash book, account was kept of the moneys received and paid out. I kept a book for copies of monthly statements made up from my cash book. In my cash book I kept account of the moneys turned in to me from the hotel office and from the restaurant and bar, and in such cash book the disbursements were also entered. Nearly all the moneys paid out were paid out by me. I bought the linens and supplies for the hotel proper. I paid the help for the hotel, the restaurant, and the engineers and their men. The payments mentioned in the pay-roll slips were made by me. There were monthly pay-rolls and weekly pay-rolls. The hotel help were paid monthly. The help in the restaurant and bar, and all the engineers except one, were paid weekly. All employes of Rice, as receiver, were paid out of moneys that came into his hands as receiver. None were paid out of his private funds."

This witness further testified: "I assisted Eaton in making up Rice's account (Exhibit 1) of the moneys received and paid out by Rice during his receivership. The data from which this account was made were obtained from my cash book. The only assistance that I gave Eaton in making up the account of the receipts and disbursements of Rice during his receivership, was in showing him anything he wanted to find out, and answering his questions. I have not examined Rice's Exhibit 2, (the detailed statement of petty items,) or compared it with my cash book. I have taken Eaton's word that the items of Exhibit 2 were correctly copied from the cash book."

Later the witness testified : "I have now (April 6, 1892,) com-
pared Exhibit 2 with my cash book, and find it correct." He
also testified : "I know the cash book is correct."

Eaton testified : "The statement (Exhibit 1) filed March 15,.
1892, purporting to show the moneys received and paid out
by Rice, as receiver, from January 23 to July 17, 1889, is in
my handwriting. I began it in January, 1892, and finished
it about March 1. The data contained in that statement I
obtained from the cash book kept at the hotel during that
period. In making that statement I did not have access to
the books of the Open Board of Trade building. I kept the
Open Board report, and we kept that compared every week or
two with the hotel part of the Open Board record. They are
the same. That statement shows the total receipts from and
disbursements for Gore's Hotel and the Open Board of Trade
building from January 23 to July 17, 1889. It is an exact
copy of the amounts as they appear on the cash book from
day to day. $66,303.83 was the amount received by Rice,
as receiver, and the same amount was paid out by him, if we
include the amount turned over to receiver Laughlin. That
statement was compared with the vouchers."

The witness Laughlin also testified : "Most of the vouchers
filed here by Rice were collected by me. While I was man-
ager for Rice a great many small sums were paid out without
any vouchers being taken, but vouchers were taken for the
larger amounts. Vouchers were not taken for moneys paid
to help. I don't know whether it is customary to take vouch-
ers for moneys paid to help. The small sums that I have
mentioned are covered by the detailed statement (Exhibit 2)
now shown me."

From the evidence it is apparent that from the time Rice
entered upon the discharge of his duties as receiver until he
resigned, a regular cash book was kept, in which all money
received and paid out was entered. The entries in the cash
book were proven to be a correct account of what was received

and what was paid out, and Rice's account as receiver was made up from this book. Some small items, as appears, were paid out for the bar and restaurant, and perhaps for some other matters needed in the hotel, for which no receipts were taken. But these payments were made in the regular course of business. The amounts were at the time entered in the cash book as paid, and the entries in this book proven to be correct. Under this evidence we regard the order of the court approving the account of the receiver correct.

Complaint is also made that the receiver failed to make out an inventory of the property when he entered upon the discharge of his duties as receiver. We think it is the duty of a receiver to make out and file with the court, when he is appointed, a list of the property which passes into his hands, so that creditors and all persons interested may know what property belongs to the parties in the case wherein the receiver has been appointed. It is true that Rice did not immediately make out an inventory of the property which passed into his possession, but subsequently an inventory was made out, which will be found in the record as Exhibit 26, which both Laughlin and Eaton, who were in the possession of the property at the time Rice was appointed, testify contains a correct description of the property. In this connection it will be observed that when Rice resigned he turned over all the property to his successor, as will appear from the receipt of his successor, as follows :

"Received of James H. Rice, late receiver, $2650.25, being cash on hand, all books of account and vouchers in my possession, and all personal property of every description, including furniture, fixtures, supplies, etc., in Gore's Hotel, together with the possession of said hotel and the Open Board of Trade building, and all leases and documents pertaining to the leaseholds.      NICHOLAS D. LAUGHLIN, *Receiver.*

"Dated July 19, 1889."

There is no pretence that Rice converted any of the property to his own use, or failed to account for anything that passed into his hands, nor is there any claim that any injury has resulted from the fact that an inventory was not at once made out and filed. Under such circumstances there is no substantial ground for the complaint made as to this branch of the case.

It is also claimed that the court erred in allowing the receiver $2600 for his services. The record contains evidence that the services were worth $1000 per month, which is almost double the amount allowed. In the absence of legislation regulating the compensation of a receiver, the court in which he is appointed has the right to determine the amount that should be paid, "and in passing upon the compensation of a receiver, an appellate court will ordinarily defer much to the judgment of the court below by which the receiver was appointed, that court having had supervision of his conduct." (High on Receivers, sec. 781.) The author, in section 783, also lays down the doctrine, that, as a general rule, the compensation should correspond with the degree of business capacity, integrity and responsibility required in the management of the affairs entrusted to him, and that a reasonable and fair compensation should be allowed, according to the circumstances of each particular case. Under the rule indicated we do not think the court, in view of all the facts and circumstances connected with the transaction, allowed more than what may be regarded a reasonable compensation.

The judgment of the Appellate Court will be affirmed, not, however, on the grounds upon which that court based its judgment.

*Judgment affirmed.*